IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 6, 2017

**STATE OF TENNESSEE v. LAWRENCE A. GRAY**

**Appeal from the Circuit Court for Madison County**
**No. 16-273       Donald H. Allen, Judge**

———————————————————

**No. W2016-02186-CCA-R3-CD**

———————————————————

The Defendant, Lawrence A. Gray, entered a guilty plea to three counts of aggravated robbery and two counts of attempted aggravated robbery with the trial court to determine sentencing. After a sentencing hearing, the trial court imposed an effective sentence of twelve years. On appeal, the Defendant asserts that the trial court improperly imposed a twelve-year sentence. We affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and NORMA MCGEE OGLE, J., joined.

Joseph T. Howell, Jackson, Tennessee, for the appellant, Lawrence Gray.

Herbert H. Slatery III, Attorney General and Reporter; Breanne N. Hataway, Assistant Attorney General; James G. Woodall, District Attorney General; and Brian M. Gilliam, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

A Madison County grand jury indicted the Defendant[1] and his co-defendant, Demarcus Hardy, for three counts of aggravated robbery and two counts of attempted aggravated robbery. At a guilty plea submission hearing, the State summarized the facts of the case as follows:

---

[1] The Defendant was a minor at the time of these offenses. After a hearing in juvenile court, the Defendant was transferred to Circuit Court to be tried as an adult. The indictments followed.

Chronologically, the attempted robbery was the first to occur on January the 22nd, Ms. Sheila Tyson, she was an employee of the [Jaxx]'s Tree Market. That's a gas station located at 1291 North Highland. She stated that two individuals came in. She recognized one of them. She also recognized that when they made their demand for money that they had a toy gun. She told them to stop. She also told them how stupid they were and that they could get themselves killed by doing something as stupid as trying to rob a store with a toy gun. So, no robbery was accomplished.

Later that same evening, these same two individuals, . . . they went to the Dollar General Store located at 1028 Campbell Street. There they made the same demand for money from the Dollar General. There they obtained from a cash register and from the person Mr. Joshua Hardin, $133 in cash. He said initially he thought that it was a joke, but when they continued to demand money that he went ahead and opened the cash register and gave them that $133 in cash. So, that was an accomplished aggravated robbery.

Later on January the 31st, these same two individuals went to 2314 North Highland Avenue which is the Waffle House. They attempted to [ ] rob the Waffle House, but couldn't manage to get the cash register open there. They did make a demand, but weren't able to accomplish that robbery, so it's an attempted aggravated robbery.

They did obtain property from Ms. Shiquita Beard. She said a cell phone was taken from her pocket.

Mr. Gohagen reported that he had some money. He couldn't remember the exact amount, but he said that it wasn't very much that was taken.

Mr. Gohagen and Ms. Beard were customers who happened to be at the Waffle House. They were not employees. Nothing was taken from the Waffle House in the attempted aggravated robbery. It would be an aggravated robbery for Ms. Beard and also Mr. Gohagen.

No actual gun was found. Later after the Waffle House robbery, these two individuals were taken into custody. They were interviewed by law enforcement. Both admitted to their involvement not only in the Waffle House incident, but also in the previous instances from the Dollar

General and the [Jaxx]'s Tree Market. . . . [T]hey said that they used what they described as a toy AR-15.

At the sentencing hearing, the State submitted the presentence report as an exhibit. The Defendant called four witnesses to testify on his behalf. Angela Gray, the Defendant's mother, testified that the Defendant was fifteen years old at the time of the sentencing hearing. She asked the trial court for leniency in sentencing based on the Defendant's young age. She explained that, "[h]e's made bad choices through being impulsive, but he has a good heart. He goes above and beyond to help other people in need." She stated that the Defendant had expressed a desire "to change" since his incarceration on the charges. Her discussions with the Defendant since his incarceration indicated to her that the Defendant had "really taken a mature outlook on things."

On cross-examination, Ms. Gray testified that, with regard to the Waffle House robbery, the Defendant told her that "threats [were] made to [his] family's safety if money was not brought." She confirmed that she did not know the identity of the person or persons alleged to have made these threats.

Lawrence Gray, the Defendant's father, testified that he and the Defendant's mother had separated in January 2013. Mr. Gray said that the Defendant began getting into trouble around the time of the separation. Mr. Gray asked the trial court to consider the Defendant's young age in ordering a sentence. Mr. Gray said that the Defendant had a "full life" ahead of him and did not want "this" to prevent the Defendant from a having a productive future. He stated that the Defendant had expressed remorse over his conduct.

On cross-examination, Mr. Gray testified regarding the Defendant's motivation for committing these crimes. She recalled that the Defendant had said "a couple of things about family being threatened and things of that nature. I did not know about it until afterwards."

Julia Hearn, "a family friend," testified that she had known the Defendant about two and a half years. She stated that she was aware of his history with the juvenile court system but nonetheless believed the Defendant to be "very sweet and tender." She added that he "always has family in his thoughts in everything that he does." During his incarceration for these offenses, the Defendant had expressed to her his aspirations and goals following his release. She asked the trial court to order a lenient sentence based upon the Defendant's young age and potential for rehabilitation.

On cross-examination, Ms. Hearn testified that after "everything happened" she learned that the Defendant was being threatened. She did not know the identity of the

person but stated that the Defendant felt he had to commit the robberies to protect his family. Upon further questioning by the trial court, Ms. Hearn testified that she did not believe the Defendant had a drug problem or was affiliated with a gang. The following exchange then occurred:

> The Court: Well, why do you say somebody has threatened him?
>
> Ms. Hearn: It just came out that that would have been the motivation to get things that somebody had threatened him and his family.
>
> The Court: Did he tell you that or did you just assume that?
>
> Ms. Hearn: It's kind of like pick up from the situation.

The Defendant made the following statement in allocution:

> I feel that I have messed up and I truly accept what I have done and what's happening with me. I'm 15. I have my whole life ahead of me. I don't want to see myself behind bars for the rest of my life. I'm saying I want to succeed in life instead of fail. Right now I'm setting for failure. What I mean by that is because I can't be the little boy that my momma wanted me to be. I can't be the son my dad wanted me to be. That truly hurts. I sit in the cell every night thinking. Just thinking and thinking and thinking. I can't stop thinking. You know what I'm saying? I hurt so much because I can't do anything for it. I'm saying my family has to suffer because I'm in here. I'm saying I love my family to death and I wouldn't do nothing to hurt them, but I know this is hurting them more than it's hurting me and it's tearing my heart on the inside because I can't do nothing about it. That's how I feel. I'm saying I truly understand that I have messed up and I have all of these charges and I do have to face the consequences of it.

Following the evidence, the trial court stated that it had considered the evidence presented at the plea hearing and the sentencing hearing, the presentence report, and noted that the Defendant had admitted to participation in all of the offenses. The trial court stated that it was considering principles of sentencing and the arguments made by the attorneys. The Defendant was to be sentenced for two Class B felony offenses with a sentencing range of eight to twelve years and three Class C felony offenses with a sentencing range of three to six years. The trial court found the Defendant was a Range I, standard offender with no prior felony convictions as an adult. The trial court noted that the Defendant had given a full confession as to his involvement in all of the offenses.

- 4 -

The trial court read a portion of the Defendant's statement, observing that the Defendant never mentioned to the police being threatened to commit the offenses as was testified to by family members and friends during the sentencing hearing.

The trial court applied enhancement factors: (3) that the offenses involved more than one victim; and (16) that the Defendant had been adjudicated to have committed a delinquent act as a juvenile that would constitute a felony if committed by an adult. T.C.A. § 40-35-114 (2014). As to enhancement factor (16), the trial court reviewed the Defendant's juvenile history beginning when the Defendant was age eleven and pointed out that the Defendant had last been "adjudicated guilty" in juvenile court on January 20, 2016, two days before he began the "crime spree" encompassing the current offenses.

The trial court considered mitigating factor (6) that the Defendant lacked substantial judgment in committing these offenses due to his youth. T.C.A. § 40-35-113 (2014). The trial court stated that the Defendant's extensive experience in juvenile court indicated that he understood the consequences of bad behavior and what it meant to violate the law. The trial court did, however, consider the Defendant's youth, fifteen years old, in mitigation. The trial court stated that it also found "important" that the Defendant had admitted and accepted responsibility. In considering the Defendant's mental health, the trial court noted that the presentence report indicated that the Defendant had been disruptive in school and a juvenile court had determined the Defendant "abuse[d]" marijuana.

Considering all of these factors, the trial court ordered twelve-year sentences for the aggravated robbery convictions and six-year sentences for the attempted aggravated robbery convictions, with all sentences to be served concurrently, for a total effective sentence of twelve years. It is from these judgments that the Defendant appeals.

## II. Analysis

On appeal, the Defendant asserts that his sentence is excessive "under the circumstances." He argues that the trial court erred when it considered whether to apply consecutive or concurrent sentencing because concurrent sentencing was part of the plea agreement. The State responds that the trial court appropriately exercised its discretion when it imposed a within-range sentence and properly considered the purposes and principles of sentencing. We agree with the State.

In *State v. Bise*, the Tennessee Supreme Court reviewed changes in sentencing law and the impact on appellate review of sentencing decisions. The Tennessee Supreme Court announced that "sentences imposed by the trial court within the appropriate

statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id.* at 554-55; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id.* at 707.

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. See T.C.A. § 40-35-210 (2014); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2014).

The Defendant was convicted of two Class B felonies as a Range I, standard offender with a sentencing range of eight to twelve years and three Class C felonies, as a Range I, standard offender with a sentencing range of three to six years.

After review of the record, we conclude that the trial court did not abuse its discretion when it sentenced the Defendant. The trial court ordered concurrent sentencing, which is consistent with the agreement between the parties.

Accordingly, we conclude that the trial court clearly stated its reasons for the sentence imposed, and the Defendant's sentence is within the appropriate range. It is apparent that the trial court considered the purposes and principles of the Sentencing Act and did not abuse its discretion. The Defendant is not entitled to relief.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE